Robert L. Black, Jr., pro se.

**Arthur Ray BOWLING, et al., Plaintiffs,**

v.

**PFIZER, INC., et. al., Defendants.**

**No. C–1–91–256.**

United States District Court,
S.D. Ohio, W.D.

June 16, 1992.

ORDER CONTINUING CASE UNTIL
JULY 22, 1992 AND OTHER
MATTERS

SPIEGEL, District Judge.

As a preliminary matter, the Court must deal with several pending motions in the case before the Court. The Pennsylvania state class objectors' motion to remove from seal their objections (doc. 145) is granted. The motion of Public Citizen to

appear *amicus curiae* (doc. 150) is granted. Similarly, the motion of the Dutch Consumentenbond to appear *amicus curiae* (doc. 153) is also granted. The Pennsylvania state class objectors have moved for leave to respond to the Plaintiffs' and the Defendants' brief (doc. 168). This motion is granted, and the Pennsylvania objectors have until June 30, 1992 to respond. Finally, the Plaintiffs' motion to strike the brief of the *Taylor v. Shiley* plaintiffs (doc. 189) is denied.

## SETTLEMENTS OF CLASS ACTIONS

We now turn our attention to other matters. This Court held a fairness hearing on the proposed settlement in this case on June 5, 8, and 9, 1992. We have studied the documents filed with the Court and have listened to the arguments at the hearing. The Court is also aware of the magnitude of the matter before it. A resolution to this case, or the lack of one, will impact thousands of heart valve implantees who reside all over the world. As a result, the Court has devoted much attention to this litigation.[1]

We note at the outset that settlements of lawsuits are much more common than trials. The benefits of settlement include the elimination of risk at trial and the reduction of transaction costs, given the high price of conducting a trial. Because both the expense and risk of loss can be magnified in complex cases, such actions are more amenable to compromise than other cases. *Manual for Complex Litigation, Second,* § 23.11, at 159 (1985).

The Federal Rules of Civil Procedure require that "[a] class action shall not be dismissed or compromised without the approval of the court...." Fed.R.Civ.P. 23(e). The rationale behind this requirement is to assure that the negotiating parties have acted in the best interests of the class, not themselves. *See Manual for Complex Litigation, Second,* § 30.41, at 236. Thus, a court must view a proposed settlement of a class action as a whole, and in light of the best interests of the class. *See id.*

A court only has the power to approve or disapprove a settlement of a class action. The agreement between the parties may not be rewritten by a court. Furthermore, courts must consider the special ability of class and defense counsel to assess the potential risks and rewards of litigation. *Id.* at 237.

## AMBIGUITIES CONTAINED IN THE PROPOSED SETTLEMENT

With this framework in mind, we now turn to the proposed settlement before this Court. The class in this case is composed of all implantees of working Bjork–Shiley convex/concave heart valves and their spouses. In this lawsuit, and others around the country, the Plaintiffs have alleged that these Shiley heart valves are prone to fracture. The proposed settlement of this lawsuit is complex. The proposed settlement includes, among other features, the following: (1) an initial payment to implantees and their spouses of

---

1. Allegations have been made that this is a "friendly" court, and that the proponents of the proposed settlement have a "home court advantage." We do not wish to ignore these allegations; consequently, we address them here. From the very outset of this case, this Court recognized its duty to protect the interests of the class. We have attempted to fulfill that duty from the Court's first meeting with the proponents of the proposed settlement through the fairness hearing. This Court has put matters on the record, such as the November 19, 1991 status conference, to allow others to later understand what the Court's role has been in this proposed settlement. At the fairness hearing,

the Court carefully listened and considered the opinions of all interested persons regarding the proposed settlement. The Court has still not determined whether the proposed settlement is fair, adequate, and reasonable.

Some of the proponents of the proposed settlement have appeared in this Court on prior cases. However, this Court has presided over the cases of many attorneys from across the United States through the years. To think that this Court favors attorneys who have had prior cases before this Court is nonsense. This Court attempts to be fair and just to all attorneys and their clients that are before it in every case, no matter who they represent or where they reside.

some amount less than $4000; (2) money for research; (3) a supervisory panel to determine guidelines as to which implantees should have their heart valve removed and receive reimbursement for those explanations; (4) compensation for expenses, lost earnings, and disability income, for those who have had explanations that qualify under the supervisory panel's guidelines; and, (5) essentially a life insurance policy if a heart valve should fracture.

In evaluating whether the proposed settlement is fair, adequate, and reasonable, the Court would find the following items to be helpful: (1) a one or two page summary of the proposed settlement to amplify its major features; and, (2) an *in camera* disclosure of the amounts of all past settlements made by the Defendants in any case involving the Bjork–Shiley c/c heart valve, including the nature of the case (e.g., fracture, emotional distress, and/or explanation), the jurisdiction of the case, and the date of settlement.

In addition, the Court has an interest in the following matters. First, under the proposed settlement, the Court is concerned that spouses of implantees, who are also class members, do not receive any compensation directly. Every implantee and their spouse is entitled to an initial payment of some amount less than $4000. Thus, class members who are single will receive substantially more per person than those class members who are married. In the event of fracture, implantees or their estates are entitled to receive more money if the implantee has a spouse. This money, however, is not directed to the spouse. In either event, we understand that a spouse of an implantee receives nothing directly when the initial payment is made and/or in the event of fracture, despite the fact that spouses are class members. Second, this

Court is concerned about the lack of publication notice in New Zealand. We recognize that most implantees from New Zealand received actual notice. However, the possibility exists that other implantees from New Zealand received neither actual or constructive notice.

Third, the Court has concerns about the payment offered to foreign implantees if their heart valves fracture. The Court has the understanding that foreign countries are grouped into four categories based upon gross national product.[2] Under the proposed settlement, a supervisory panel will then determine an amount of compensation that is fair for each of the four groups of countries. This Court understands that the supervisory panel's determination as to the amount of compensation for each of the four groups of countries will involve computing an overall *average* amount for fracture claims in the countries composing that group.[3] The Court has the following concerns about this system of compensation for foreign implantees: (1) no information has been offered regarding the minimum amount each of the four groups would receive under the proposed settlement; (2) the Court does not understand how the supervisory panel plans to determine the worth of such a claim for each of the countries involved in the proposed settlement; and, (3) the Court is concerned about the fairness to implantees who reside in countries which award high amounts in fracture claims, but the amount of compensation implantees from these countries receive is lessened because those high-paying countries are grouped with other countries which award lower amounts in fracture claims.

Fourth, the Court is concerned about paragraph 5.2.3.1(a) of the proposed settlement. This provision allows a class member to petition the Court to determine whether the class member qualifies for

**2.** The Court was never given an explanation as to why the proposed settlement divides the countries up into four groups based upon gross national product. The grouping of countries based upon gross national product appears to have, at best, a remote relationship with what

an implantee could receive in bringing a lawsuit.

**3.** These claims may or may not be wrongful death claims, as the implantee may survive a fracture.

heart valve replacement under the guidelines issued by the supervisory panel. However, we can envision the rare situation in which an implantee should have an explanation for certain individual reasons, but does not qualify under the supervisory panel's guidelines. This Court is concerned that without the right to petition this Court for review based upon the equities of the implantee's individual case, an injustice may result.

Fifth, the Court has other concerns about explanations. We believe that the following issues are ambiguous or have not been adequately explained to the Court: (1) an estimate as to how long the supervisory panel will take in issuing guidelines as to which heart valve recipients will be reimbursed for explanations; (2) whether the supervisory panel must wait for research to be conducted from the Research Fund until it issues guidelines as to who qualifies for a reimbursed explanation.

Finally, this Court is concerned about the payment of attorney fees under the proposed settlement. The proposed settlement has not fully addressed from which fund(s) the attorney fees should be paid. This Court believes that it would be inequitable to award the entire amount of attorney fees from the fund that is going to be divided up equally among the class members initially. Moreover, this Court believes that if attorney fees are awarded, they should be paid out over time, so as not to deplete the funds that were designed for the benefit of the class. In that event, the Defendants should recognize that under such an arrangement, the Defendants may have to advance money to the research fund more rapidly than planned in order to ensure that the research fund has adequate financing, as part of that fund may be paid to class counsel for attorney fees.

## CONCLUSION

Accordingly, the fairness hearing is continued until July 22, 1992 at 10 a.m. At that time, the Court desires a report from the parties concerning changes to the proposed settlement, if any. The Defendants shall diligently continue to determine the individuals who compose the class in the proposed settlement.

SO ORDERED.

